Edward J. Amann, Jr., J.
On September 25, 1970, the State of New York, pursuant to section 30 of the Highway Law filed an acquisition map in the office of the County Clerk of Suffolk County. The map, denominated Map No. 2 for the "Acquisition of Property-Development of Republic Airport and Republic Transportation, Farmingdale, Long Island, County of Suffolk for the use of Metropolitan Transportation Authority” contained one parcel, known as Parcel No. 2.
After filing the acquisition map, the State attempted to personally serve the owner of the property, the Wodembarc Corporation. First, on December 9, 1970, the State attempted to personally serve the president of the corporation, Justine L. Lambert, at her residence at 301 Park Avenue, New York City. However, they were unable to contact her or personally serve her.
On the next day, December 10, 1970,[1] the State attempted to personally serve the corporation at its last known address, 230 Park Avenue, New York City. Again, the State was unable to complete service, because they were unable to locate the office of the corporation.
On January 20, 1971, an advance payment agreement was signed. It was subsequently approved by the Comptroller on March 24, 1971 and the corporation was paid $2,089,500.
Thereafter, on February 11, 1971, the State filed two certificates in the office of the Clerk of the County of Suffolk. These certificates indicated that a reasonable attempt at personal service had been made and that having failed to make personal service, the State would perfect service by filing and recording the appropriate descriptions and notices.
On January 20, 1972, the New York State Department of Transportation received a letter from the law firm of Windels, Merritt and Ingraham. The letter made reference to the proceeding, parcel and map number and requested that the additional 25% unpaid balance of the State’s appraisal be paid to the corporation. It also referred to the original advance payment agreement and the fact that payment had been received in April of 1971, two months after the filing of and *360 recording of the notice. The next day, the Department of Transportation sent out the appropriate forms, which were executed by J. Lawson Lambert (also known as Justine L. Lambert) as president of the Wodembarc Corporation on March 10, 1972. The agreements were approved by the Comptroller on May 3, 1972 and payment was made in June of 1972.
Ms. Lambert died in her apartment in the Waldorf Astoria Hotel, 301 Park Avenue, New York City, on June 3, 1975. On May 12, 1976, Lester W. Ebbets and Jeannette V. Minturn, administrators of the estate of Justine L. Lambert, filed a claim as assignees of all the property and assets, including claims and issues in actions of Wodembarc Corporation, under an assignment made on October 6, 1975.
The State in its motion to dismiss argues that the instant claim is time barred under the relevant provision of the Court of Claims Act. The claimants reply that the time limitation of section 10 of the Court of Claims Act does not begin to run until proper service is made. They contend that since the State did not personally serve the corporation, as they allege it could have by serving the Secretary of State pursuant to subdivision (a) of section 304 of the Business Corporation Law, the time has not yet begun to run. They argue that the attempt at substitute service, by filing and recording the notice and description, was invalid since personal service could have been made.
In its reply affidavit, the State retorts that subdivision (a) of section 304 of the Business Corporation Law does not apply to notices of appropriation since it is an administrative act not an action or proceeding. They further argued that the certificate of incorporation of the claimants’ predecessor in title limits receptions of process to "actions and proceedings.”
Under subdivision (a) of section 304 of the Business Corporation Law, the Secretary of State is designated as the agent of a domestic corporation for the purpose of service of process. The purpose of this section is to acquire in personam jurisdiction over corporations. The term "process”, as used in this section, is defined by section 102 (subd [a], par [11]) of the Business Corporation Law as: "judicial process and all orders, demands, notices or other papers required or permitted by law to be personally served on a domestic or foreign corporation, for the purpose of acquiring jurisdiction of such corporation in any action or proceeding, civil or criminal, whether judicial, *361 administrative, arbitrative or otherwise, in this state or in the federal courts sitting in or for this state.” (Emphasis added.) Therefore, in order for a notice of appropriation to come within the definition of "process” it must be, at the very least, for the "purpose of acquiring jurisdiction of such corporation.” The claimants argue that subdivision 1 of section 10 of the Court of Claims Act is not a notice provision since it refers to personal service. They cite Barker v State of New York (207 Misc 83) as authority for the proposition that subdivision 1 of section 10 is not a notice provision. The holding of the case, however, is that the statutory period runs from personal service of a copy of the description and map and notice of the filing thereof, as provided by the statute. The only legal principle, which may properly be derived from the Barker case is that the State must utilize one of the methods of notice specified in the statute in order to commence the running of the time limitation against a claimant.
The claimants also rely on a series of cases which allegedly hold that section 10 of the Court of Claims Act is jurisdictional and must be strictly construed. While the language of the cases is unambiguous, the claimants have failed to discern the fact that in the cases cited, deviations from the statute were committed by the claimants, not the State. The rationale for these decisions is found in Gates v State of New York (128 NY 221) which was cited by the claimants. The court stated that (p 228): "[t]he state cannot be sued without its consent and it has the right, in authorizing the maintenance of proceedings for the recovery of claims against it, to impose such terms and conditions and to prescribe such procedure as its legislative body shall deem proper. The conditions imposed become jurisdictional facts and determine the status and right of the litigant.”
When the State waived its immunity from liability, under section 8 of the Court of Claims Act, it did so: "provided the claimant complies with the limitations of this article.” (Court of Claims Act, § 8.) The limitations alluded to in section 8 are contained in section 10. Therefore, unless a claimant complies with these limitations, they will become jurisdictional facts as to his status and right to file a claim. Therefore, the provisions of section 10 are not for the purpose of acquiring jurisdiction over a claimant, but rather for the purpose of restricting an otherwise unqualified right to file a claim. The provision of subdivision 1 of section 10 concerning notice, *362 merely sets forth the typical method which commences the running of the time limitation.[2] Accordingly, the court finds that the notice of appropriation is not a process as defined by the Business Corporation Law and, therefore, personal service would not be perfected by serving a notice of appropriation upon the Secretary of State.
The court also finds that the two attempts at personal service were reasonable and that the State therefore had a right to utilize the substitute service provision of subdivision 1 of section 10. Having served the corporation by substitute service, the time within which to file a claim begins to run from February 11, 1971, the date the certificates were filed. The facts as recited by the court clearly indicate notice of the appropriation to the corporation, its president, and its attorneys.
Also, although a copy of the original advance payment agreement was not submitted by either the State or the claimant, the court assumes it was of the standard type, containing the standard clauses and a description of the proceeding, map and parcel.[3] The agreement also contained printed clauses indicating that the claimants alleged ownership of property which had been appropriated by the State. Other clauses advised claimants of their right to file a claim for amounts in excess of the advance payment. This agreement was signed on behalf of the corporation and was approved by the Comptroller.
From this agreement and the one which supplemented it, it is quite clear that the corporation had received notice, not only of the acquisition, but also of the property involved in the taking. It also accepted payment by the State of its total appraisal amount; never objecting to the improper service, nor filing a claim. This, despite the fact that it was represented by able counsel and had sufficient moneys available to commission its own appraisal.
Assuming, arguendo, that there were defects in service, the corporation by the totality of its actions over a two-year period was guilty of laches and has waived any defect in service.
*363 Accordingly, the court finds that the claim was untimely filed and therefore grants the State’s motion to dismiss.

. It should be noted that December 9 and 10 fell on Wednesday and Thursday in 1970.

. Although the papers do not refer to a de facto appropriation, it is possible that the claimants’ time to file expired as a result of the State’s usurpation of the corporation’s property rights with its knowledge.

. The court makes this assumption, not only on the basis of the form of the supplemental agreement, but also because the letter from the corporation’s attorneys, dated January 20, 1972, refers to the proceeding number, map and parcel.